# United States Bankruptcy Court
# District of Massachusetts
# Western Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| EDWARD R. SZWYD, | ) | Case No. 05-50837-HJB |
| Debtor. | ) | |
| JACK E. HOUGHTON, JR., Chapter 7 Trustee, | ) | |
| Plaintiff | ) | |
| v. | ) | Adversary Proceeding NO. 06-04274 |
| THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE and EDWARD R. SZWYD, | ) | |
| Defendants. | ) | |

## **MEMORANDUM OF DECISION**

In this Adversary Proceeding, the Chapter 7 trustee in bankruptcy requests that the Court compel the United States to marshal certain assets of the debtor on which the United States holds tax liens, in order to preserve funds of the bankruptcy estate for unsecured creditors. Now before this Court is the "United States' Motion to Dismiss" (the "Motion to Dismiss") filed by the Defendant United States Department of Justice on behalf of the

1

United States Department of the Treasury and the Internal Revenue Service (together, the "United States" or the "IRS"), pursuant to Fed. R. Bankr. P. 7012(b)(6).  The United States contends that the Complaint fails to state a claim upon which relief can be granted because the United States cannot and should not be compelled to marshal assets, generally and in this case in particular.

I.     **FACTS AND TRAVEL OF THE CASE**

Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss for failure to state a claim) is made applicable to adversary proceedings in bankruptcy cases through Federal Rule of Bankruptcy Procedure 7012(b) incorporating Rule 12(b)(6) by reference.  Case law under Fed. R. Civ. P. 12(b)(6) is well-settled.  A court will "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability."  Santander De Puerto Rico v. Lopez, 324 F.3d 12, 15 (1st Cir. 2003)(citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal under Rule 12(b)(6) will only be permitted if "the factual averments do not justify recovery on some theory adumbrated in the complaint."  Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)(quoting Rogan, 175 F.3d at 77).  Accordingly, although on its face there appear to be no material factual disputes, the Court, for these purposes, will assume the truth of all facts averred by the Plaintiff.

On October 16, 2005 (the "Petition Date"), the Debtor filed for relief under Chapter 13 of the Bankruptcy Code.[1]  The case was subsequently converted to Chapter 7 and

---

[1]    Unless otherwise stated, all statutory references are to Title 11 of the United States Code, §§ 101 *et seq*. (the "Bankruptcy Code" or the "Code").

attorney Jack E. Houghton, Jr. (the "Trustee") was appointed as the Chapter 7 trustee.

On the Petition Date, the Debtor was the sole owner of two parcels of real property listed on his bankruptcy Schedule A.[2] The first, located at 366 North Plain Road in Great Barrington, Massachusetts, is the Debtor's residence (the "Residence"). In 1996, the Debtor recorded a declaration of homestead for this property pursuant to Massachusetts General Law (M.G.L.) ch. 188, §1 (the "Homestead Exemption"). According to the Debtor's schedules, the current market value of the Residence is $450,000; and it is encumbered by a first mortgage in favor of Greylock Federal Credit Union in the approximate amount of $225,000. The second parcel is located at 80 Maple Avenue in Great Barrington, Massachusetts (the "Maple Avenue Property"). That property was listed on the Debtor's schedules with a current market value of $40,000, but encumbered by a mortgage held by Berkshire Bank with an approximate balance of $14,000.

In the course of his liquidation of estate assets, the Trustee sold the Maple Avenue Property for the sum of $72,000. After payment of the mortgage balance to Berkshire Bank, closing costs, and an award of interim fees in the case, the estate was left with approximately $25,000 remaining from the sale proceeds.

As of the Petition Date, there were also two recorded tax liens against the Debtor in favor of the United States.[3] According to an Amended Proof of Claim filed by the IRS,

---

[2] Prior to the filing of the bankruptcy case, the real estate was owned by a trust. See In re Szwyd, 346 B.R. 290 (Bankr. D. Mass. 2006), aff'd sub nom., Houghton v. Szwyd, 370 B.R. 882 (1st Cir. B.A.P. 2007). In Szwyd, this Court ruled, that, because the Debtor had become, prepetition, the sole trustee and sole beneficiary of that trust, his legal and equitable interests had merged and the trust was terminated as a matter of Massachusetts law.

[3] Both liens are recorded in the Southern Berkshire Registry of Deeds in Great Barrington, Massachusetts. The first, in the amount of $31,062.66, was recorded on February 12, 2002 in Registry Book 1299, Page 15. The second, in the amount of $24,584.23, was recorded on August 9, 2002 in Registry Book 1342, Page 106.

the liens secure claims now totaling $133,359.88. The United States also holds unsecured priority claims totaling $2,586.05 and unsecured general claims totaling $2,385.73.

## II.    POSITION OF THE PARTIES

Pursuant to § 544(a)[4], the Trustee, as a hypothetical lienholder as of the Petition Date, requests, as might any junior lienholder, that the United States marshal its collateral. He argues that the bankruptcy estate will otherwise be irreparably harmed because all of the remaining proceeds from the sale of the Maple Avenue Property would then be turned over to the IRS, but the Trustee would be unable to sell the Residence on account of the Homestead Exemption - thereby leaving nothing available for unsecured creditors.[5] The Trustee contends that both the Bankruptcy Code and Massachusetts state law permit the IRS to levy upon and sell the Residence notwithstanding the Homestead Exemption. Thus, the IRS has access to an asset of the Debtor that it alone can reach. In addition, because the total of the IRS liens is in excess of the remaining proceeds from the sale of

---

[4]    Section 544(a) of the Bankruptcy Code states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
    (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
11 U.S.C. § 544(a).

[5]    Debtor's Schedule F reports fifteen (15) unsecured creditors with a combined total of $537,491.37 in unsecured debt.

the Maple Avenue Property, the Trustee contends that, in order to fully satisfy its lien claims, the IRS will be forced to levy upon the Residence in any event. Therefore, the Trustee maintains, equity demands that the IRS look first to the Residence, leaving the proceeds from the Maple Avenue Property to be distributed to the other creditors who would otherwise be left with nothing.

The IRS does not disagree with the Trustee's contention that the United States has the statutory and legal authority to satisfy its liens and claims against the Residence notwithstanding the Homestead Exemption. However, the IRS argues that it cannot and should not be forced to turn first to the Residence when there exist more easily accessible assets in the bankruptcy estate which can be applied to its lien claims. First, the IRS argues that, as a matter of law, the doctrine of marshaling cannot be applied against the United States. Second, the IRS maintains that, even if the marshaling doctrine is applicable to the United States as a matter of law, general unsecured creditors cannot invoke the doctrine - and that the Trustee, even with his hypothetical lienholder status, is nothing more than an entity stepping into the shoes of the unsecured creditors. Third, the United States argues that applying the doctrine to this case in particular would be inequitable because it would prejudice both the Debtor and the United States.[6] And fourth,

---

[6] Counsel for The Debtor, although seemingly in agreement with the United States' arguments in favor of the Motion to Dismiss, did not provide supplemental briefs or participate in the discussion at the September 19, 2007 and December 7, 2007 hearings, other than to clarify that the hearings were solely to address the Motion to Dismiss and not to provide a final ruling on the adversary proceeding itself.

The Debtor denies the Trustee's claim that Massachusetts law permits the IRS to pierce the Homestead Exemption to satisfy the Debtor's outstanding tax liens. As set forth in his November 13, 2006 Answer to the Trustee's Complaint, the Debtor claims the Trustee is:
> "acting in a mean-spirited manner, as the IRS can choose not to enforce a right it has, if any based on its policies, procedures and regulations. The Trustee is asking the Court to ignore the purpose of the body of law comprising Bankruptcy, by denying the Debtor a **Fresh Start,** with a home for his family."

The Debtor filed a Supplemental Pre-Trial Stipulation with the Court on September 18, 2007, wherein

the United States asserts that the principles of judicial estoppel preclude the Trustee from employing the doctrine of marshaling.

## III.  DISCUSSION

### A. The Doctrine of Marshaling

It is beyond refutation that bankruptcy courts have the equitable power to order the marshaling of assets in a bankruptcy case or proceeding.  In re Larry's Equip. Serv., Inc., 23 B.R. 132, 133 (Bankr. D. Me. 1982).  The doctrine of marshaling "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds."  Meyer v. United States, 375 U.S. 233, 236 (1963)(quoting Sowell v. Fed. Reserve Bank, 268 U.S. 449, 456-57 (1925)).  As stated in Meyer,

> [Marshaling] is founded . . . in equity, being designed to promote fair dealing and justice.  Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security.

375 U.S. at 238.  Thus, the marshaling doctrine requires that a senior lienholder resort first to assets unavailable to the junior lienholder to prevent the "inequity which would otherwise result from the unnecessary elimination of the junior lienholder's security with the increased likelihood the junior creditor would be unable to satisfy its claim."  Shedoudy

---

he shared the United States' position that as a matter of law the Trustee cannot force the IRS to marshal against specific assets of the Debtor.  The Debtor further stated that Massachusetts law does not allow the Homestead Exemption to be overriden to satisfy general tax obligations.  Additionally, the Debtor contends that the tax liens did not attach to the Residence because they were filed against the Debtor personally and not against the the trust that was its legal owner - a curious argument indeed in light of the Debtor's contrary argument which succeeded in his entitlement to the Homestead Exemption itself.  See In re Szwyd, supra. In any event, the validity of the tax liens on the petition date is beyond the scope of the instant Motion to Dismiss and was not addressed at the hearings.

6

et al. v. Beverly Surgical Supply Co. et al., 100 Cal. App. 3d 730, 733 (1980).

Marshaling is generally understood by reference to state law since the rights of lienholders typically arise in a non-bankruptcy venue. In re Dig It, Inc., 129 B.R. 65, 67 (Bankr. D. S.C. 1991)(citations omitted). Massachusetts law requires that a junior lienor seeking to apply the marshaling doctrine prove the existence of: "(1) a common debtor; (2) two separate funds, one of which is a common fund available to both creditors and one of which is available only to the senior creditor; and (3) no detriment or prejudice to the senior creditor if he is required to pursue the fund to which he alone can look." In re T.H.B. Corp., 85 B.R. 192, 196 (Bankr. D. Mass. 1988)(citations omitted). The burden for demonstrating the propriety of marshaling in a particular case is upon whomever seeks the benefit therefrom, Johnson v. Wilson, 145 Wash. 515, 518 (1927), and courts traditionally require that the doctrine be applied only when it can be equitably employed as to all parties with an interest in the property. Meyer, 375 U.S. at 237. Here, that would include the Debtor. In re United Retail Corp., 33 B.R. 150, 153 (Bankr. D. Haw. 1983). Considering the foregoing, this Court will address each of the IRS arguments in turn.

### 1.    Marshaling as Applied to the United States

The IRS contends that the doctrine of marshaling, as a matter of law, cannot be applied to the United States. This Court does not believe that application of a *per se* rule of such breadth is warranted.

The IRS cites to five cases outside of this Circuit as authority for its assertion that the United States is immune to the marshaling doctrine: United States v. Herman, 310 F.2d 846, 848 (2nd Cir. 1962)(stating that the Court would not "subject the government to

7

a requirement that it marshall [sic] assets in favor of junior lienors, as this would create an extreme burden on the collection of revenue, unauthorized by statute."); In re Ackerman II, 424 F.2d 1148, 1150 (9th Cir. 1970)(holding that a junior lienor cannot invoke the marshaling doctrine to prevent the United States from enforcing tax liens against property as to do so would create a "substantial burden, unauthorized by statute, upon the collection of federal revenue."); United States v. Eshelman, 663 F. Supp. 285, 288 (D. Del. 1987); First of Am. Bank v. Alt, 848 F. Supp. 1343, 1351 (W.D. Mich. 1993); and Northington v. United States, 30 A.F.T.R.2d. (RIA) 72-5832, at *4 (W.D.Tex. 1972).

This Court does not read Herman to state squarely the broad rule which the IRS suggests. The Herman ruling is one in *dicta*, labeling the marshaling issue in that case merely as a "miscellaneous" contention by the appellant and noting that, were the government subject to a marshaling requirement, an "extreme burden" on revenue collection would result. 310 F.2d at 848. The Courts in Ackerman, Eshelman, Alt, and Northington, all cite to the Herman Court when stating that the marshaling doctrine cannot be applied to the United States.

This Court rejects any reading of Herman as establishing a *per se* rule prohibiting marshaling against governmental taxing authorities and believes that the language of Herman was, appropriately, a case-specific decision. See In re Bame, 279 B.R. 833, 837-38 (8th Cir. B.A.P. 2002). As the Bame Court stated,

> Rather, each case [Ackerman and Herman] specifically states that based upon the facts of the case the imposition of marshaling on the government would create a burden on the collection of revenue. Ackerman, 424 F.2d at 1150 ("substantial burden") and Herman, 310 F.2d at 848 ("extreme burden"). Each case can be interpreted as applying a balancing test to determine that the imposition of marshaling was not appropriate under the circumstances of the case, rather than imposing a *per se* rule….

8

> Accordingly, we decline to hold that the application of marshaling to governmental taxing authorities is *per se* prohibited. Rather, we conclude that marshaling must be evaluated on a case by case basis, regardless of whether a taxing authority is involved.

Id. at 838.

Furthermore, it has been specifically held in this Circuit that marshaling can be applied against the United States. As quoted by the District Court in Maine Associates v. United States,

> Where the federal government has a lien on both real estate and personal property, it cannot exhaust the value of the real estate before proceeding to the personal property to the complete exclusion of the specific liens [of the other claimants].

53 B.R. 489, 492 (D. Me. 1985)(quoting In re Ann Arbor Brewing Co., 110 F.Supp. 111, 116 (E.D. Mich. 1951) and citing United States v. Lord, 155 F.Supp. 105 (D. N.H. 1957)).

The IRS describes the rulings of Maine Associates and Lord, as standing "upon tenuous authority" because Lord and Ann Arbor Brewing, the cases upon which Maine Associates relied, do not reference any authority for their conclusion in support of marshaling. United States Supplemental Brief, p.8 n.3. However, the Herman case, which the United States first cites as authority for its position and which is also cited as authority by Ackerman, Eschelman, Alt and Northington, similarly does not provide authority for its conclusion that the government cannot be required to marshal its assets. Thus, the "tenuous authority" upon which the United States claims the Maine Associates court relied, is no more "tenuous" than that upon which the United States now relies.

Further, the IRS contends that the doctrine of marshaling should not be applied to the United States because of the "substantial burdens" it would place upon the government. Here, the IRS either misstates or misunderstands the doctrine itself. Where

9

the senior lienholder would be prejudiced by an order to marshal assets, the doctrine is unavailable to its proponent. The doctrine itself avoids the harm that the United States fears. Accordingly, there is no reason to shelve the doctrine and lose the opportunity to employ it in cases that are appropriate for its use.

In this case, the Trustee argues, and, for purposes of the Motion to Dismiss, the Court must accept that there are two available assets to satisfy the IRS tax liens: the sale proceeds being held by the bankruptcy estate and the Residence. Although the Debtor has stated that he intends to contest whether the United States may satisfy its claims from the equity in the Residence notwithstanding the Homestead Exemption, the United States itself concedes that any opposition would be futile.[7] See M.G.L. ch. 188, §1 (Massachusetts homestead exemption does not protect the property from a "sale for taxes"). Nor would payment to the United States be materially delayed or the IRS be drawn into otherwise unnecessary litigation if it was required to look first to the Residence. The remaining proceeds of the sale of the Maple Avenue Property now in the hands of the Trustee - approximately $25,000 - is not enough to satisfy even one-fifth of the liens which the IRS claims. Therefore, in order to wholly satisfy its interests, the IRS must look to the Residence *anyway*. Conversely, there is more than enough equity in the Residence to fully cover the IRS tax liens without resort to the funds held by the Trustee.[8]

---

[7]     United States v. Rodgers, 461 U.S. 677, 701 (1983); See also Davenport v. United States, 136 B.R. 125, 127-28 (Bankr. W.D. Ky. 1991)(citing United States v. Bess, 357 U.S. 51 (1958).

[8]     This Court cannot quarrel with the IRS view that the United States has been drawn into unnecessary litigation. But that litigation is not so much its fight with the Debor, as the instant dispute with the Trustee over application of the marshaling doctrine. Had the IRS not held to its position, the United States would likely have collected payment in full on its lien claims long ago. Furthermore, courts have ruled that the delay involved in foreclosure is not the kind of injury to senior creditors that would preclude marshaling. See In re Hale, 141 B.R. 225, 228 (Bankr. N.D. Fla. 1992)(citing In re Multiple Serv. Ind., 18 B.R. 635, 637 (Bankr. E.D. Wis. 1982).

### 2.      Standing to Seek Imposition of the Marshaling Doctrine

Traditionally, marshaling has been applied in cases where two secured creditors, one senior to the other, hold claims to a single piece of collateral.  Massachusetts law specifically recognizes the right of junior lien creditors to invoke the marshaling doctrine. In re Paulding, Inc., 76 B.R. 7, 8 (Bankr. D. Mass. 1987).  The doctrine is unavailable, however, for use by unsecured creditors.  First Nat. Bank of Boston v. Proctor, 40 F.2d 841, 844 (1st Cir. 1930).

The IRS argues that the Trustee does not have standing to invoke the marshaling doctrine because he stands in the shoes of unsecured creditors.  In this, the IRS misunderstands the import of § 544(a).  The Trustee has the status of a hypothetical lien creditor and it is irrelevant that the final beneficiaries of that status may include unsecured creditors.

The IRS urges this Court to adopt a position similar to that of the court in Fed. Land Bank of Columbia v. Tidwell, wherein the trustee's marshaling request, claiming standing as a hypothetical lien creditor under § 544, was denied because that court held that § 544(a) in that context "would be a use of the strong-arm clause not contemplated by Congress." 40 B.R. 66, 70-71 (Bankr. M.D. Ga. 1984).  This Court respectfully disagrees and believes that the better view is that stated by those courts who have ruled, in direct contrast to Tidwell, that a trustee's status as a hypothetical judicial lienholder grants the Trustee the standing to seek application of the marshaling doctrine.  In re Spectra Prism Ind., Inc., 28 B.R. 397, 399 (9th Cir. B.A.P. 1983); In re: Wilmot Mining Co., 167 B.R. 806, 811 (Bankr. W.D. Pa. 1994); In re Hale, 141 B.R. 225, 227 (Bankr. N.D.Fla. 1992); In re Vermont Toy Works, Inc., 135 B.R. 762, 768 (D. Vt. 1991);  In re C & B Oil Co., 72 B.R.

11

228, 229-30 (Bankr. N.D. Ohio 1987)(citing In re Tampa Chain Co., Inc., 53 B.R. 772 (Bankr. S.D.N.Y. 1985). As the Ninth Circuit BAP noted in Spectra Prism,

> The question of a trustee's status as a hypothetical judicial lienholder under § 544 was previously dealt with by § 70 of the Bankruptcy Act. The legislative history of the "strong-arm clause" indicates that the basic purpose underlying the section was to avoid the "evil" of secret liens and transfers of the debtor's property. 45 Cong. Rec. 2277 (1910). However, that basic purpose is not its sole purpose. Concerning § 70(c), the court in Sampsell v. Straub, 194 F.2d 228 (9th Cir. 1951), held:
>> "Whether its impact in a particular case is upon secret liens or upon some other impediment to the distribution of the property of the debtor... Section 70 sub. C embodies a comprehensive conception of according the trustee such status as a diligent general creditor might have achieved but for the intervention of bankruptcy." 194 F.2d at 231.
> The stature of the trustee as a judicial lien creditor has been expanded consistently over the 80 years of the existence of the Code sections. Today, under § 544(a), the trustee may act not only to avoid transfers of the property of the debtor, but he is granted all other rights and powers that a creditor holding a judicial lien would have had after prevailing in a simple contract action, whether or not such creditor exists in fact.

Id. at 399.

### 3.    Prejudice to the Debtor and the United States

In determining whether to apply the marshaling doctrine, the rights of all who have an interest in the property, including the debtor, must be considered. United Retail, 33 B.R. at 153. Marshaling will only be applied if it can be "equitably fashioned as to all the parties". Id. (citing In re Leonardo, 11 B.R. 453 (Bankr. W.D. N.Y. 1981)(emphasis added)).

With respect to the United States, application of the marshaling doctrine in this case is unlikely to have a prejudicial effect. The Residence has more than enough equity to satisfy the tax liens, including any accruing interest.[9]

The IRS attempts to make a larger case for prejudice by raising the rights of the Debtor. But those pleas are premature, and, in any event, likely to fail. First, while, federal courts have ruled that they should consider state homestead exemption statutes when determining whether to apply the marshaling doctrine, Meyer, 375 U.S. at 237-38, here, state law provides no such exemption in the face of tax claims.[10] The Massachusetts legislature apparently concluded that, as between its concern for the debtor's homestead and the public need to raise revenue, the latter would prevail. Second, while the Debtor has half-heartedly noted its agreement with the United States, *he* has not moved to dismiss the case. And, third, without deciding the issue in advance,

---

[9]   In fact, ironically, denying the Trustee's request to compel the IRS to look first to the equity in the Residence might produce less net revenue for the government than by allowing it. Were the United States to apply the remaining sale proceeds of the Maple Avenue Property to is lien claims, those claims would be reduced dollar for dollar by the amount of its receipts. If, as a result, the unsecured creditors received nothing on their unsecured claims, some or all of those creditors would likely be entitled to corresponding income tax deductions on account of their bad debts from the Debtor. See I.R.C. § 166 (2008).

[10]   M.G.L. ch. 188 § 1 states, in part:

Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:
(1) sale for taxes;

M.G.L. ch. 188 § 1A para. 5 states, in part:

The following shall be exempt from the provisions of this section: federal, state and local taxes, assessments, claims and liens; first and second mortgages held by financial institutions or others; any and all debts, encumbrances or contracts existing prior to the filing of the declaration; an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children; where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand.

but based on the undisputed record, this Court can not ignore who the Debtor is and the nature of the government's tax claims.

The Debtor is a certified public accountant. His debt to the United States arises, at least in large part, from his conversion of funds that he was obligated to withhold from his employees and safeguard for the benefit of the United States, but did not. The tax does not arise from a levy on his income but from his assertion of control over and his dissipation of funds of the United States. That the United States, a victim of that dissipation, would urge this Court either to show compassion for the Debtor or force other creditors to subsidize the Debtor's obligation and thereby lose any hope for recovery of even the pittance which the law has provided for their benefit is curious indeed.

In the words of the Bame bankruptcy court decision from the Eighth Circuit, describing the reasoning of another decision, but well-suited to the case now before the Court:

> . . . where refusal to marshal allows the parties who have caused the loss to the junior creditors to escape with substantial assets or to tip toe from the scene of the economic debacle hand in hand with the senior lienholder, bankruptcy courts are permitted to exercise their equitable power to reduce the loss to the general creditors.

In re Bame, 271 B.R. 354, 362-63 (Bankr. D. Minn. 2001).

### 4. Judicial Estoppel

Finally, the IRS contends that the Trustee is judicially estopped from seeking the equitable remedy of marshaling because the Trustee allegedly relied on § 724 to justify his award of interim compensation earlier in the case.

Judicial estoppel will apply when a party has previously succeeded under a position that is directly inconsistent with the position that it currently espouses. SEC v. Happ, 392 F.3d 12, 20 (1st Cir. 2004)(citations omitted). The doctrine will be applied to prevent "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Thore v. Howe, 466 F.3d 173 (1st Cir. 2006)(quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). Whether the doctrine applies is largely a matter of intent.

> This court has stated that "[j]udicial estoppel should be employed when a litigant is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'"

Happ, 392 F.3d at 20 (citing Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987)(quoting Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3d Cir. 1953))).

The IRS contends that the Trustee's current position is inconsistent with that at the time of the filing of the interim application for compensation.[11] That contention is without merit.

Generally, a Chapter 7 trustee applies for compensation at the conclusion of the bankruptcy case. However, given the amount of litigation which had taken place prior to the filing of the fee application and the likelihood of ongoing litigation, the Trustee

---

[11] The United States refers to Docket entry number 137 when making the assertion that the Trustee relied upon § 724 in order to compensate himself for attorney's fees. However, the Court notes that Docket entry 137 is actually the Debtor's assent to the interim award of trustee compensation. Docket entry 134 is the First Interim Application of Compensation.

15

requested allowance of interim fees.[12]  That § 724 might ultimately apply was certainly a possibility then and now.  Further, the Trustee does not deny that the United States has a valid lien claim on the Maple Avenue Property or the Residence nor is he seeking to deny payment in full to the United States.  He is simply requesting that the IRS be compelled to pursue payment of its lien claims, in their entirely, through a fund which it will inevitably have to reach and which would do no harm to less favored creditors of the estate.  This request is not contradictory to a position which the Trustee has previously taken nor is it the type of behavior which would trigger the doctrine of judicial estoppel.

### IV.    CONCLUSION

For all of the foregoing reasons, the "United States' Motion to Dismiss" will be DENIED.  A separate Order in conformity with this Memorandum of Decision shall issue forthwith.

DATED:    April 14, 2008

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

---

[12] The Trustee's interim application for compensation disclosed over 113 total hours expended in the case and requested $28,400 in fees and $911.71 for expenses.  At the March 9, 2007 hearing on the Trustee's interim fee application, the United States Trustee stated that it had no objection to the amount requested given the amount of litigation in the case and the "unusual circumstances" involved.  The application for fees was granted in the amount requested.