# United States Bankruptcy Court
# District of Massachusetts
# Western Division

```
_____  )
                             )
In re:                       )
                             )            Chapter 7
EDWARD R. SZWYD,             )            Case No. 05-50837-HJB
                             )
          Debtor.            )
_____  )
JACK E. HOUGHTON, JR.,       )
Chapter 7 Trustee,           )
                             )
          Plaintiff          )
                             )
       v.                    )            Adversary Proceeding
                             )            NO. 06-04274
THE UNITED STATES OF AMERICA,)
DEPARTMENT OF THE TREASURY,  )
INTERNAL REVENUE SERVICE     )
and EDWARD R. SZWYD,         )
                             )
          Defendants.        )
_____  )
```

### MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR RECONSIDERATION

Before this Court is the United States' "Motion to Reconsider 4/14/08 Decision Denying U.S. Motion to Dismiss Marshaling Claim (Raising Sovereign Immunity)" (the "Motion to Reconsider"), filed in the above-captioned adversary proceeding.[1] The order complained of permits the Chapter 7 trustee (the "Trustee") to raise the doctrine of

---

[1] The United States of America pursues this action on behalf of the United States Department of the Treasury and the Internal Revenue Service (collectively, the "United States").

1

marshaling against the United States for the benefit of the bankruptcy estate. For the reasons set forth herein, the Motion to Reconsider will be denied.

**I.     FACTS AND POSITIONS OF THE PARTIES**

The facts and background of this case are set forth in this Court's Memorandum of Decision accompanying an Order, dated April 14, 2008, and are incorporated herein by reference. The United States originally made four arguments supporting dismissal of this adversary proceeding: first, that the doctrine of marshaling could not, as a matter of law, be applied to the United States; second, that the Trustee did not have standing to invoke the marshaling doctrine; third, that to allow marshaling in this particular case would be prejudicial to the Debtor and to the United States; and fourth, that judicial estoppel precluded the Trustee from invoking the doctrine. In its April 14, 2008 Memorandum of Decision, this Court found each of the United States' arguments wanting and denied the motion to dismiss.

Now, in support of reconsideration, the United States introduces a new defense grounded upon sovereign immunity, and also seeks to rehash the propriety of marshaling as applied against the United States. With respect to the latter, the United States argues that to require it to pursue exempt assets would invalidate the efficacy of state-created exemptions. In support of what amounts to a "slippery slope" argument, the United States questions how far marshaling could or should be applied for the benefit of general creditors.

The Trustee filed a timely opposition to the Motion to Reconsider and complained that the arguments now advanced by the United States could and should have been made prior to the rendering of this Court's decision. The United States thereafter filed an

additional memorandum responding to the Trustee's opposition.[2]

## II.   DISCUSSION

The United States addressed its two points for consideration in reverse order of introduction and this Court will do the same.

---

[2]   As the United States advances in its response to the Trustee's opposition, this Court's April 14, 2008 ruling was not a final judgment in the adversary proceeding and may be subject to revision. Federal Rule of Civil Procedure 54(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7054, states:

> When an action presents more than one claim for relief - whether as a claim, counterclaim, crossclaim, or third-party claim - or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment* adjudicating all the claims and all the parties' rights and liabilities. (emphasis added)

However, this Court is not unsympathetic to the Trustee's position.  Fairness, judicial efficiency, professionalism and civility counsel that parties should not reserve arguments specifically for use in later rounds of litigation.  In fact, absent extraordinary circumstances, courts will not consider arguments that were not "seasonably advanced." Clauson v. Smith, 823 F.2d 660, 665 (1st Cir. 1987)(citations omitted).  But there is no absolute bar to presenting new arguments on reconsideration or on appeal - consideration of those arguments is subject to court discretion.  Furthermore, this Circuit has held that the United States can raise the defense of sovereign immunity at any time.  See In re Torres, 432 F.3d 20, 23 n.3 (1st Cir. 2005)(citing United States Fid. and Guar. Co., 309 U.S. 506, 513 (1940))(noting that "the defense of sovereign immunity cannot be waived in litigation").  Accordingly, the United States is free to make its sovereign immunity argument here.  This Court can not, however, fail to acknowledge the irony that, in the course of presenting its sovereign immunity argument at this late stage, the United States contends (or better said, pretends) in footnote 1 of its Motion to Reconsider that its goal in this case is efficiency:

> One of the concerns that motivates this motion to reconsider is that, according to the decision, there is presently only about $25,000 left of the proceeds of the Maple Avenue Property (after Trustee expenses  qualifying under § 724(b)), and we are mindful that the Trustee's fees could ultimately exhaust the balance unless this matter is resolved as efficiently as possible. With due respect to the Court's decision, the Court surely understands that the issue of marshaling is a recurring one of importance to the United States and an appeal from this Court's decision is therefore highly likely if we are not able to convince the Court to change its mind.

Furthermore, this Court can not also fail to recognize the government's implied threat by its words in this context that, regardless of the outcome, it will use the cost of litigation to ensure that the bankruptcy estate receives no benefit from the remaining funds even if the marshaling doctrine proves successful.  It is this Court's experience that this type of heavy-handed argument rarely changes the views of any court and is particularly unattractive when made by the government.

### A.  Equitable Invasion of Debtor's Exemptions

As this Court stated in its April 14, 2008 Memorandum of Decision,

> It is beyond refutation that bankruptcy courts have the equitable power to order the marshaling of assets in a bankruptcy case or proceeding. In re Larry's Equip. Serv., Inc., 23 B.R. 132, 133 (Bankr. D. Me. 1982). The doctrine of marshaling "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." Meyer v. United States, 375 U.S. 233, 236 (1963)(quoting Sowell v. Fed. Reserve Bank, 268 U.S. 449, 456-57 (1925)).  As stated in Meyer,
> "[Marshaling] is founded . . . in equity, being designed to promote fair dealing and justice.  Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security."
> 375 U.S. at 238.

This Court found, based upon the facts of this *particular* case, that equity necessitated the application of the marshaling doctrine.  The Debtor is an accountant.  He owes approximately $133,359.88 in tax claims to the United States.  As reported on the Debtor's schedules, there are $537,491.37 in unsecured debt obligations.  The current market value of the Residence is $450,000 and encumbered by a first mortgage of approximately half as much.  Only $25,000 remains in the bankruptcy estate from the sale of the Debtor's unrelated real estate.  The United States proposes to take this paltry amount otherwise available for general unsecured creditors first, leaving the bankruptcy estate with nothing.  And, as this Court observed in its prior decision, for the United States to be paid in full, it will have reach to the equity in the Debtor's residence in any event.[3]  To

---

[3]  The United States, in its Motion to Reconsider, attempts to assure this Court that it does "not favor the result that might obtain absent marshaling out of any compassion for the debtor."  Mot. to Recons. at 2. But, at the same time, the United States makes the contradictory suggestion that it may be willing to "forego [sic] or at least postpone collection" of the Debtor's tax claims to avoid proceeding against a residence which has over $200,000 of equity that the United States can reach.  Id. at 4.  Accordingly, while suggesting that this Court has no discretion, the United States seeks to preserve all of *its* discretion, including, curiously, whether

allow the United States to satisfy its claims first from the bankruptcy estate would do little more than reward a Debtor who failed to pay his tax obligations and punish unsecured creditors, including the Trustee. Even the Massachusetts legislature, the source of the homestead statute permitting homeowners to exempt some or all of the value of their residences from certain creditors, made the specific policy decision that homeowners should not be shielded from tax collection. See M.G.L. ch. 188 §§ 1 and 1A (each providing a specific statutory exemption from the protection of the homestead estate for a "sale for taxes").

The United States is not incorrect when it suggests that other cases may present different fact patterns in which marshaling will not be appropriate. But that is the point of the marshaling doctrine, housed in equity. It is case-specific. If the facts were different - the occupation of the debtor, the amount of unsecured debt, the amount of available equity in the Debtor's residence, the amount of the tax claims at issue, for example - this Court may have decided differently. But the facts have not changed and neither has this Court's decision.

### B.    Sovereign Immunity and the Anti-Injunction Act

The United States now for the first time argues that it is not subject to the marshaling doctrine on account of the competing doctrine of sovereign immunity and on account of the Anti-Injunction Act.[4]

---

to collect the tax from a taxpayer with the means to pay it.

[4]    The Anti-Injunction Act states in part:

(a) Tax...[N]o suit for the purpose of restraining the assessment or collection of any tax shall

Reliance by the United States on the doctrine of sovereign immunity is entirely without merit. Section 106(a)(1) of the Bankruptcy Code could not be clearer.

**Section 106  Waiver of sovereign immunity**

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

   (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

Any suggestion that, notwithstanding the plain meaning of the statute, Congress did not intend to waive sovereign immunity with respect to an equitable and common law doctrine grounded in §105(a) and to which the Trustee has standing under § 544(a), despite the plain words of the statute abrogating sovereign immunity with respect to both, is groundless. See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004), United States v. Ron Pair Enter., Inc., 489 U.S. 235, 240-241 (1989).

The United States argues further that applying the marshaling doctrine against the United States constitutes an interference with tax collection prohibited by the Anti-Injunction Act . The United States maintains that § 105(a) of the Bankruptcy Code has "universally" been held not to supercede the Anti-Injunction Act and cites to five cases as authority.[5]

---

be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).

[5]    See In re Heritage Village Church and Missionary Fellowship, Inc., 851 F.2d 104 (4th Cir. 1988); In re American Bicycle Ass'n, 895 F.2d 1277 (9th Cir. 1990); In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989); In the Matter of LaSalle Rolling Mills, 832 F.2d 390 (7th Cir. 1987); In the Matter of Becker's Motor Transportation, Inc., 632 F.2d 242 (3d Cir. 1980).

Indeed, the cases cited by the United States support the United States' position, but in the United States' search of the universe for authority, it conveniently omitted the contrary line of cases whose view this Court believes is better-reasoned. This Court aligns itself with those in agreement with the reasoning from Bostwick v. United States which states,

> [W]e do not believe that the "anti-injunction statute" is relevant ... as Congress has evidenced an intention to enact a complete scheme governing bankruptcy which overrides the general policy represented by the "anti-injunction" act ... We believe that the overriding policy of the Bankruptcy Act is the rehabilitation of the debtor and we are convinced that the Bankruptcy Court must have the power to enjoin the assessment and/or collection of taxes in order to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner, and fulfill the ultimate policy of the Bankruptcy Act.

521 F.2d 741, 744 (8th Cir. 1975).[6]

See In re Wheeler, 183 B.R. 267, 269 (Bankr. W.D. Okla. 1995)(stating that Bostwick is the "better reasoned view" and that in a "proper" case tax collection efforts may be enjoined); and see Becker's Motors, 632 F.2d at 251 (Seitz, C.J., concurring); In re Miller, 80 A.F.T.R. 2d. 97-5809, 97-5810 (Bankr. S.D. Ala. 1997); Matter of A & B Heating and Air Conditioning, Inc., 48 B.R. 397, 400-401 (Bankr. M.D. Fla. 1985); In re Jon Co., Inc., 30 B.R. 831, 834-235 (D.C. Colo. 1983).

Furthermore, the cases cited by the United States - American Bicycle, American Hardwoods, LaSalle Rolling Mills, Heritage Village, and Becker's Motors - are not apposite to the facts presented here. American Bicycle, American Hardwoods, LaSalle Rolling Mills

---

[6] Bostwick was decided under the Bankruptcy Act which was subsequently amended by the Bankruptcy Reform Act of 1978, P.L. No. 95-598, 92 Stat. 2549, but the basic policies of the two remain the same. While Bostwick was later limited on its facts in A to Z Welding & Mfg. Co., Inc. v. United States, 803 F.2d 932 (8th Cir. 1986)(holding that the Anti-Injunction Act prevents "an attempt to prohibit the IRS from collecting a tax assessed against officers and shareholders in their personal capacity."), A to Z Welding did not suggest that a bankruptcy court was precluded from deferring the collection of a tax claim against a debtor's bankruptcy estate.

and Heritage Village present situations where the United States sought to pursue collection activity against non-debtor principals or guarantors or which would affect non-debtor taxpayers.[7] This case does not involve a non-debtor principal, guarantor or taxpayer - the Debtor is an individual consumer debtor. And although Becker's Motors directly involves a debtor's attempt to enjoin United States tax collection efforts, this Court does not agree with the reasoning contrary to Bostwick used in the Becker's Motors Court's majority analysis - it is the reasoning of the concurring opinion which this Court finds more compelling.

Finally, when viewed in greater context, any suggestion that the Anti-Injunction Act serves to restrain a bankruptcy court from enjoining the collection of tax owed to the United States against the debtor or the bankruptcy estate is meritless. The Automatic Stay under § 362(a) of the Bankruptcy Code restrains the United States from collecting tax against the bankruptcy estate, without concern or interference on account of the Anti-Injunction Act.[8] Nor is there any concern about whether, by virtue of § 524 of the Bankruptcy Code, tax debt to which §523(a)(1) does not apply can be discharged.

---

[7]  The District Court in Heritage Village reasoned that revoking the debtor's tax exempt status would result in tax assessment against those who contributed to the organization. As the taxpayers would no longer be able to claim a tax deduction for their contributions, their tax liability may increase. However, the taxpayers were not debtors and the court's decision to prohibit the injunction depended upon whether the bankruptcy court had jurisdiction to enjoin the assessment or collection of taxes against non-debtors - the same issue addressed in American Bicycle, LaSalle Rolling Mills, and American Hardwoods. 87 B.R. 401, 406 (Bankr. D.S.C. 1988).

[8]  Although the automatic stay is but a temporary restraint, so is the doctrine of marshaling. If the United States is not able to collect its tax debt from the Debtor's residence, it may do so from the bankruptcy estate.

## IV.    CONCLUSION

This Court is not attempting to prohibit or restrain the United States in its tax collection process.  In fact, it encourages the United States to pursue full collection.  In denying the Motion to Dismiss and the Motion for Reconsideration, this Court is simply allowing the Trustee to pursue an order requiring that the United States begin its collection with the Residence - property the United States must reach if it either intends to collect the full claim amount or if the Debtor had never filed for relief under the Bankruptcy Code.

For all of the foregoing reasons, the "Motion to Reconsider" will be DENIED.  A separate Order in conformity with this Memorandum of Decision shall issue forthwith.


Dated:  September 8, 2008          By the Court,

                                   *[signature: Henry Jack Boroff]*

                                   _____
                                   Henry J. Boroff
                                   United States Bankruptcy Judge