**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

_____
)
In re:                                     )     Chapter 7
)     Case No. 05-50837-HJB
EDWARD R. SZWYD,              )
)
Debtor                  )
_____ )
)
JACK E. HOUGHTON, JR.,      )
CHAPTER 7 TRUSTEE,            )     Adversary Proceeding
)     No. 06-4274
Plaintiff,           )
v.                                         )
)
UNITED STATES OF AMERICA,  )
DEPARTMENT OF THE TREASURY )
INTERNAL REVENUE SERVICE  )
AND EDWARD R. SZWYD,       )
)
Defendants          )
_____ )

**MEMORANDUM OF DECISION**

Before the Court are cross-motions for summary judgment filed by the plaintiff in this adversary proceeding (the Chapter 7 trustee in the underlying bankruptcy case) and the defendant United States of America (by the Internal Revenue Service) (the "United States" or the "IRS"). The Trustee has asked that this Court compel the IRS to marshal certain assets of the debtor on which the United States holds tax liens, in order to preserve funds of the bankruptcy estate for unsecured creditors. The Court having previously denied the

1

IRS's request for dismissal of the case, the parties now seek resolution through summary judgment.

I.    FACTS AND TRAVEL OF THE CASE

Edward R. Szwyd (the "Debtor") filed for relief under Chapter 13 of the United States Bankruptcy Code (the "Code" or the "Bankruptcy Code")[1] on October 16, 2005. On January 6, 2006, the case was converted to one under Chapter 7, and Jack E. Houghton, Jr. was appointed the Chapter 7 trustee (the "Trustee"). At the time of filing, the Debtor owned two pieces of real property – his residence (the "Residence") and a second property at 80 Maple Avenue (the "Maple Avenue Property"), both located in Great Barrington, Massachusetts.[2] Both the Residence and the Maple Avenue Property are subject to recorded tax liens against the Debtor in favor of the United States, which secured claims – according to the IRS's most recently amended proof of claim – total $87,571.53.[3]

This Court previously determined that the Debtor has a valid exemption in the Residence under § 522(c) of the Code, based upon the exemption provided for by

---

[1] See 11 U.S.C. §§ 101 et seq. Unless otherwise noted, all section references in this Memorandum are to the Bankruptcy Code.

[2] At the time of filing, the Debtor owned both properties as sole trustee and beneficiary. In an earlier decision, this Court held that, because the Debtor was the sole trustee and sole beneficiary of the trust, his legal and equitable interests had merged and the trust was terminated as a matter of Massachusetts law. See In re Szwyd, 346 B.R. 290 (Bankr. D. Mass. 2006). Although the Trustee appealed that decision (in which the Court had also concluded that the Debtor had a validly-claimed exemption in the Residence), the "merger of the title issue" was not challenged on appeal. See Houghton v. Szwyd (In re Szwyd), 370 B.R. 882, 889 (1st Cir. B.A.P. 2007) (affirming decision below).

[3] The IRS's first proof of claim was filed on May 2, 2006. It has since been amended twice. It was last amended on June 15, 2010, asserting, in addition to its secured claims, unsecured priority claims totaling $48,261.82 and unsecured general claims totaling $2,385.73. See Proof of Claim No. 14, In re Szwyd, 05-50837.

Massachusetts law (the "Homestead Exemption"), see In re Szwyd, 346 B.R. at 294, aff'd, 370 B.R. at 891, precluding the Trustee from selling the Residence to garner any additional funds for the bankruptcy estate.[4] But the Massachusetts Homestead Statute specifically excludes tax claims from the exemption, see Mass. Gen. Law ch. 188, § 1(1) (providing a specific statutory exemption from the protection of the homestead estate for a "sale for taxes"), leaving the approximately $225,000 of equity in the Debtor's Residence available (and more than sufficient) to satisfy the IRS's claims in full.

The Trustee *was*, however, able to sell the Maple Avenue Property, in which the Debtor had claimed no exemption, for an amount in excess of the mortgage lien. Having paid the balance of the mortgage on that property, as well as closing costs and an interim fee award to the Trustee, the Trustee holds approximately $26,000 for distribution to creditors.[5] These funds are insufficient to pay the IRS's secured claims in full, and the IRS will be compelled to look to the Residence to satisfy the entirety of its claims against the Debtor regardless of whether it receives a distribution from the bankruptcy estate.

On September 9, 2006, the Trustee filed the present adversary proceeding against the United States requesting an order requiring the United States to marshal its collateral. In the complaint (the "Complaint"), the Trustee argued that the IRS should be compelled

---

[4] The Debtor scheduled the Residence with a market value of $450,000, subject to a mortgage with an approximate payoff of $225,000. Pursuant to the homestead exemption then provided for under Massachusetts law, see Mass. Gen. Law ch. 188, § 1 (the "Homestead Statute"), the Debtor is entitled to an exemption of up to $500,000 in any equity in the Residence. As the secured claim when added to the exemption far exceeds the value of the Residence, the Trustee cannot realize any additional funds from a sale of the property.

[5] This amount includes an additional $10,000 in proceeds from a settlement the Trustee reached, with the Court's approval, in a separate adversary proceeding. See Moynihan v. Kowacyk, P.C., 06-4217 (Bankr. D. Mass. filed Sept. 6, 2006); Order Granting Mot. to Compromise Claim, In re Szwyd, 05-50837, May 30, 2007, ECF No. 146.

to proceed against the Residence to recover on its secured claims, leaving the proceeds held by the bankruptcy estate available for a small distribution to unsecured creditors.[6] The IRS responded by filing a Motion to Dismiss, arguing primarily that the United States simply could not be compelled to marshal its collateral. In addition, the IRS argued that (1) the Trustee had no standing to seek marshaling; (2) even if this Court could order the United States to marshal its collateral, marshaling was inappropriate in this specific case; and (3) the Trustee was judicially estopped from seeking marshaling. See Mot. to Dismiss Hr'g Tr. 2:17-9:18, Sept. 19, 2007, ECF No. 40; United States' Supplemental Mem. in Supp. of Mot. to Dismiss 6-17, Dec. 20, 2007, ECF No. 41.

On April 14, 2008, this Court issued a Memorandum and Order denying the Motion to Dismiss. See Houghton v. United States (In re Szwyd), 394 B.R. 230 (Bankr. D. Mass. 2008) ("Szwyd I"). The Court rejected the judicial estoppel argument, id. at 241-42, and held that the Trustee's status as a hypothetical lienholder pursuant to § 544(a) of the Code provided the Trustee with the standing to request, as might any judicial lienholder, that a senior secured creditor (here, the United States) be required to marshal its collateral. Id. at 239-40. The Court also ruled that there is no *per se* prohibition against compelling a governmental taxing authority to marshal its collateral, id. at 237-38, and further indicated that, based on the facts alleged in the Complaint, marshaling would be appropriate in this case. Id. at 240-41.

In reaching its conclusion that marshaling was appropriate in this case, the Court

---

[6] In addition to the IRS's priority and general unsecured claims, the Massachusetts Department of Revenue (the "DOR") has filed a proof of claim asserting priority unsecured tax claims in the amount of $37,921.29, and the general unsecured creditors' claims total over $500,000. See Proof of Claim No. 13, In re Szwyd, 05-50837.

4

applied the standards for marshaling under Massachusetts law.[7] "Massachusetts law requires that a junior lienor seeking to apply the marshaling doctrine prove the existence of: '(1) a common debtor; (2) two separate funds, one of which is a common fund available to both creditors and one of which is available only to the senior creditor; and (3) no detriment or prejudice to the senior creditor if he is required to pursue the fund to which he alone can look.'" Id. at 236-37 (citations omitted). Furthermore, marshaling applies under Massachusetts law "only when it can be equitably employed as to all parties with an interest in the property." Id. at 237. The Court found that all three requirements for marshaling were met. Id. at 238.

In determining that marshaling could be equitably employed in *this* case, the Court took into consideration a variety of factors, namely that: (1) the IRS would be required to look to the equity in the Residence to satisfy the Debtor's federal tax obligations regardless of whether the IRS was paid the entirety of the funds held by the Trustee; (2) the equity in the Residence was more than sufficient to fully cover the tax liens of the United States; (3) the Massachusetts Homestead Statute contains an express exception for the payment of tax debts; (4) the Debtor had failed to raise any concrete or independent objection to the Trustee's marshaling request; and (5) the Debtor is a certified public accountant and his obligations to the United States arise from his dissipation of tax withholdings from his employees' wages for which he was a fiduciary of the United States. Id. at 240-41.

The IRS then filed a motion seeking reconsideration of this Court's denial of the

---

[7] This Court noted that the Massachusetts law of marshaling applied, as "[m]arshaling is generally understood by the reference to state law since the rights of lienholders typically arise in a non-bankruptcy venue." Szwyd I, 394 B.R. at 236 (citations omitted).

Motion to Dismiss (the "Motion for Reconsideration") on two grounds.  First, the IRS again raised the propriety of compelling marshaling in this case, arguing that requiring the United States to marshal its assets "would invalidate the efficacy of state-created exemptions." Houghton v. United States (In re Szwyd), 394 B.R. 242, 244 (Bankr. D. Mass. 2008) ("Szwyd II").[8]  Second, the IRS introduced new arguments based on sovereign immunity and the Anti-Injunction Act, 26 U.S.C. § 7421(a).  Id. at 246.  The Court rejected the latter two arguments in turn.  Id. at 246-48.  And the Court reiterated its holding in Szwyd I that, "based upon the facts of this *particular* case, [ ] equity necessitated the application of the marshaling doctrine."  Id. at 245 (emphasis in original).

The IRS then filed an appeal to the United States District Court for the District of Massachusetts.  The District Court affirmed this Court's previous decisions, upholding the denial of the Motion to Dismiss.  See United States v. Houghton (In re Szwyd), 408 B.R. 547 (D. Mass. 2009) ("Szwyd III").  The District Court agreed that

> [t]he power of federal courts, including bankruptcy courts, to order marshaling has long been recognized . . . A trustee in bankruptcy may seek marshaling on behalf of unsecured creditors, who cannot do so on their own, based on his or her status as a hypothetical lien holder as of the date of the petition.

Id. at 550.  The District Court similarly rejected the IRS's arguments founded in sovereign immunity and the Anti-Injunction Act.  Id. at 551-53.  Importantly, the District Court also affirmed this Court's equitable analysis and agreed that this case presented an appropriate

---

[8] See also Mot. to Recons. 4/14/08 Decision Denying U.S. Mot. to Dismiss Marshaling Claim (Raising Sovereign Immunity) 2-6, April 21, 2008, ECF No. 48.

circumstance for application of the marshaling doctrine.  Id. at 551.[9]

The dismissal of the case having been denied, the matter remained to be finally determined before this Court.  To that end, in September 2010, both the IRS and the Trustee filed competing motions for summary judgment.  Both sides opposed the other's summary judgment request and, after a hearing on the motions, the matter was taken under advisement once again.

II.     POSITIONS OF THE PARTIES

  A.    **Appropriateness of Marshaling in this Case**

In its motion for summary judgment, the IRS notes that this Court, in Szwyd I, stated that the question whether marshaling should be applied to the particular facts of this case was "premature," and the IRS says the issue is now ripe for consideration.  Relying on Meyer v. United States, 375 U.S. 233 (1963), the IRS again argues that the Court should not compel the United States to marshal its assets, since to do so would intrude on the Debtor's Homestead Exemption.  In support of this renewed argument, the IRS points to the First Circuit Court of Appeals' more recent statements in Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318 (1st Cir. 2008).  According to the IRS, the Cunningham decision precludes any consideration of the Debtor's "bad acts" in determining whether marshaling is appropriate.

The Trustee disagrees with the IRS's analysis of the Meyer case, arguing that the

---

[9] The IRS appealed the District Court's decision to the First Circuit Court of Appeals, but ultimately dismissed that appeal voluntarily.  See Def. United States' Mem. in Supp. of its Mot. for Summ. J. 3, ¶ 3 n.2, Sept. 20, 2010, ECF No. 81.

Supreme Court's analysis is distinguishable, as the Massachusetts Homestead Statute specifically excludes from its protections the payment of tax debts. In fact, the Trustee argues, the reduced surplus the Debtor may receive from a sale of the Residence is wholly consistent with the intent of the Massachusetts legislature in crafting the tax exception to the Homestead Statute. Also, says the Trustee, the Cunningham decision actually supports the Trustee's position because the First Circuit specifically noted that although property exempt under § 522(c) is generally insulated postpetition from the payment of prepetition debts, there were several exceptions – including an exception for the payment of prepetition tax debts.

### B.    Priority Claims

The IRS also raises one new argument against marshaling, now directing the Court's attention to the existence of priority tax claims asserted by the Massachusetts DOR and the IRS. According to the IRS, there is simply no point in requiring the United States to marshal its collateral, since marshaling will not benefit general unsecured creditors. Instead, the funds held by the Trustee will be exhausted by the payment of priority unsecured claims.

In response, the Trustee argues that the existence of priority claims in excess of the amount currently held by the bankruptcy estate is irrelevant. Because those priority claims are still *unsecured* claims, requiring the IRS to marshal its assets will serve the same purpose of benefitting creditors who would otherwise receive nothing from the bankruptcy estate.[10]

---

[10] The Trustee raises an additional argument in response to the IRS's assertion that the priority tax debts will exhaust the estate's funds and render marshaling meaningless. In short, the

8

III.  DISCUSSION

    A.  **Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to these proceedings by Fed. R. Bankr. P. 7056). There is no question that the material facts are undisputed. This Court therefore reaches its conclusions as a matter of law.

    B.  **Appropriateness of Marshaling**

The IRS's arguments anent the application of the marshaling doctrine to the facts of this case have previously been raised and ruled upon by this Court and by the District Court on appeal. Those rulings are incorporated herein by reference. See Szwyd I, 394 B.R. 230; Szwyd II, 394 B.R. 242; Szwyd III, 408 B.R. 547.

"The doctrine of the law of the case directs that a decision of an appellate court as to a matter of law governs that issue during all subsequent stages of litigation," Santiago-Ramirez v. Sec'y of Dep't of Def., 62 F.3d 445, 447 (1st Cir. 1995), and "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." United States v. Wallace, 573 F.3d 82, 88 (1st Cir. 2009) (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)); see also Kashner Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 23-24 (1st Cir. 2010).

Although in Szwyd I, the Court initially stated that the IRS's arguments regarding

---

Trustee argues that at least a portion of the priority unsecured tax claims should be subordinated to general unsecured claims. This request, however, well exceeds the scope of the Complaint. Such subordination arguments are more properly addressed through the claims objection process and not in the context of the present adversary proceeding.

prejudice to the Debtor[11] were "premature," this statement reflected the Court's cognizance that it was ruling on a motion to dismiss. Although aware that additional evidence presented on summary judgment or at trial could perhaps alter the Court's ultimate ruling, the Court nevertheless *did* consider whether marshaling could be equitably applied *"based on the undisputed record,"* Szwyd I, 394 B.R. at 240 (emphasis supplied), holding that:

> while federal courts have ruled that they should consider state homestead exemption statutes when determining whether to apply the marshaling doctrine, Meyer, 375 U.S. at 237-38, here, state law provides no such exemption in the face of tax claims. . . . [W]hile the Debtor has half-heartedly noted its agreement with the United States, *he* has not moved to dismiss the case. . . . And . . . this Court can not ignore who the Debtor is and the nature of the government's tax claims.

Id. After a full consideration of the undisputed facts, including a consideration of "who the Debtor is and the nature of the government's tax claims,"[12] the Court ruled that equity militated in favor of applying the marshaling doctrine. Id.

The IRS then raised the same arguments in its Motion for Reconsideration.[13] Again, this Court rejected those arguments, noting first that "the Massachusetts legislature, the source of the homestead statute permitting homeowners to exempt some or all of the value

---

[11] See Mot. to Dismiss Hr'g Tr. 6:14-8:15; Supplemental Mem. in Supp. of Mot. to Dismiss 13-15.

[12] Specifically, the Court explained:

> The Debtor is a certified public accountant. His debt to the United States arises, at least in large part, from his conversion of funds that he was obligated to withhold from his employees and safeguard for the benefit of the United States, but did not. The tax does not arise from a levy on his income but from his assertion of control over and his dissipation of funds of the United States.

Szwyd I, 394 B.R. at 241.

[13] See Mot. to Recons. 2-6.

of their residences from certain creditors, made the specific policy decision that homeowners should not be shielded from tax collection." Szwyd II, 394 B.R. at 246. The Court then reiterated that "based upon the facts of this *particular* case, . . . equity necessitated the application of the marshaling doctrine." Id. at 245. Because "the facts ha[d] not changed . . . neither ha[d] this Court's decision. Id. at 246.

The IRS then appealed the precise question whether this Court "err[ed] in ruling that the doctrine of marshaling may be applied against the United States and the debtor when its application prejudices the United States and the debtor as parties having superior equities in the property to be marshaled, and application of the doctrine would also override the State of Massachusetts' policy regarding its homestead exemption statute[.]" Designation of R. & Statement of Issues for Appeal 3-4, Sept. 29, 2008, ECF No. 59.

The District Court affirmed this Court's legal conclusion based on the facts as presented, rejecting the IRS's plea to consider that the Debtor "would be prejudiced by the order to marshal because he would be entitled to any funds remaining after all the tax liens have been paid." Szwyd III, 408 B.R. at 551. Instead, the District Court found that the IRS's argument

> is at odds with the very concept of marshaling as recognized by Massachusetts law. Marshaling will almost always result in a greater amount of funds flowing to creditors, with a smaller residue for the Debtor. This virtually inevitable reality cannot form the basis of any legitimate objection to marshaling.

Id. The District Court further affirmed this Court's holdings in Szwyd I and Szwyd II "that Massachusetts law permits marshaling *in this case.*" Szwyd III, 408 B.R. at 551 (emphasis supplied). Because the District Court explicitly ruled on the legal question whether the marshaling doctrine should apply based on the facts of this case and no additional facts

11

have been presented by either party's motion for summary judgment, that ruling is now the law of the case and precludes reconsideration of identical arguments raised in the IRS's motion for summary judgment.

While a trial court *may* reconsider an issue previously determined by an appellate court "in very special situations," Wallace, 573 F.3d at 88-89 (quoting United States v. Bell, 988 F.2d 247, 250-251 (1st Cir. 1993)), none of those limited circumstances warrant such reconsideration here. The First Circuit has limited such reconsideration to "'exceptional circumstances'; a change in controlling legal authority, significant new evidence . . . or the prospect of a serious injustice." Wallace, 573 F.3d at 89.[14]

Considering each in reverse order, this Court first concludes that the "manifest injustice" exception does not apply. Wallace, 573 F.3d at 89 (quoting Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002)). None of the arguments raised in the IRS's motion for summary judgment leave the Court with "a definite and firm conviction that a prior ruling on a material matter [was] unreasonable or obviously wrong." Wallace, 573 F.3d at 89 (quoting Ellis, 313 F.3d at 648-49).[15] And there is no indication that any material fact is now in dispute; the operative facts have remained unchanged since the disposition of the Motion to Dismiss.

---

[14] See also United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir. 1991), cert. denied, 502 U.S. 862 (1991) ("issues, once decided, should not be reopened 'unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice").

[15] Cf. Negron-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) (serious injustice exception to the law of the case doctrine applied where both the district court and appellate court acknowledged that an earlier decision by the district court was "obviously wrong" and "highly prejudicial" to the losing party).

Nor has there been a change in controlling legal authority that would compel reconsideration of this Court's conclusion that marshaling should apply here. The intervening decision in Cunningham does not represent a change in relevant law. In that case, the First Circuit Court of Appeals rejected an argument made by a prepetition creditor holding a nondischargeable debt that a postpetition sale of exempt property made the proceeds of the sale available to satisfy the creditor's nondischargeable claim. Cunningham, 513 F.3d at 325. In ruling that the prepetition debt could not be satisfied from otherwise exempt property, the First Circuit noted that the bankruptcy court had overruled the creditor's objections to the debtor's exemption and had allowed the debtor's motion to avoid the creditor's judicial lien. Id. at 323. Relying on the plain language of § 522(c), the First Circuit held that the proceeds from the sale of the exempt property were not converted into non-exempt property, since § 522(c) clearly states that "property exempted under this section is not liable *during or after* the case for any debt of the debtor that arose . . . before the commencement of the case . . . ." Id. at 323-24 (quoting 11 U.S.C. § 522(c)). The First Circuit further held that the exemption protections provided for under the Bankruptcy Code could not be limited simply "because [the debtor] is a dishonest debtor," because to do so would "effectively . . . rewrite § 522(c)." Id. at 325.

The Cunningham decision merely clarified that a "post-petition sale of [exempt property] . . . did not cause the proceeds of the sale to lose their exempt status under the Bankruptcy Code and become subject to . . . pre-petition nondischargeable debt." Id. It did *not* address or implicate the legal principles upon which this Court and the District Court relied in concluding that marshaling was proper in this case. Here, the Debtor's Residence is *not* exempted from the United States' prepetition tax claims, whereas in Cunningham,

the bankruptcy court had specifically ruled that the debtor's property was exempt from that creditor's nondischargeable claim and granted the motion to avoid the creditor's lien as impairing that exemption.  Id. at 323.

The First Circuit declined to consider the debtor's fraudulent conduct in Cunningham because it found that the Bankruptcy Code's plain language compelled the conclusion reached in that case.  Id. at 324-25.  But the doctrine of marshaling specifically *requires* the court to determine whether marshaling should apply only after analyzing the equities in a particular case.  Included in this Court's and the District Court's consideration was, of necessity, "the Debtor's starkly reprehensible conduct – his theft of his employees' withheld taxes[.]"  Szwyd III, 408 B.R. at 551.  And, in light of the totality of factors, the District Court affirmed that "equitable considerations powerfully support the underlying decision here."  Id.

In sum, this Court is bound by the District Court's rulings of law in Szwyd III, affirming this Court's application of the doctrine of marshaling to the particular facts of this case.  Those facts have not changed, and relevant law also has not changed.  Accordingly, the law of the case doctrine precludes this Court from reopening the question of whether this is an appropriate case for application of the marshaling doctrine.  The Court's decision remains the same – equity necessitates the application of the marshaling doctrine here.

**C.    Priority Unsecured Creditors**

The second of the IRS's arguments on summary judgment is easily dispensed with. The IRS argues that there is simply no point in requiring it to marshal its assets, since the funds held by the Trustee will be exhausted by priority unsecured tax claims at any rate. That argument, however, ignores the fact that the Trustee represents not only general

14

unsecured creditors, but is the "duly appointed . . . representative of *all* unsecured creditors[.]" Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1145 (1st Cir. 1992). In fact, "a trustee in bankruptcy represents *every* class of creditors of the bankrupt," Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.), 294 F.2d 785, 793 (7th Cir. 1961), cert. denied, 369 U.S. 803 (1962), and is charged with the duty to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. § 704(a)(1).[16] Whether priority or general unsecured creditors ultimately benefit from an order requiring the IRS to marshal its assets, the principle remains the same – marshaling will go some way toward allowing creditors who would otherwise receive nothing to realize something without burdening the creditor who has everything.

IV.     CONCLUSION

The Court continues to be baffled by the by the IRS's posture in this case, and continues to join with the District Court in questioning:

> Why is the government, whose mission is to protect the interests of the citizenry, ignoring those interests . . . and being so petty?  It is undisputed that the government's claim can be entirely satisfied out of the fund to which it alone has access.  Taking this approach would leave a pittance for a very modest distribution to the unsecured creditors.  Yet the government insists, for no apparent practical reason, on snatching even this away. . . . Counsel

---

[16] For instance, while the sale of estate property that will clearly generate only funds for a secured creditor or the trustee's administrative fee is generally frowned upon, there is nothing untoward in a Trustee's decision to "sell assets that will generate sufficient proceeds to ensure a distribution to unsecured creditors, *priority or general*." U.S. Dep't of Justice, Exec. Office for U.S. Tr., Handbook for Ch. 7 Tr. (July 2002, with amendments effective Jan. 1, 2011), at 8-17 (available at: http://www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/ch7_handbook/ch7_handbook_2011.pdf) (emphasis supplied).

15

> [to the IRS] merely reiterated the principle that the bankruptcy court in this context lacked the power to order the government to be sensible and humane, and, if a precedent were established recognizing this power, unspecified but dreadful consequences might result.

Szwyd III 408 B.R. at 553.  This Court likewise continues to be disturbed by the IRS's posture suggesting that this Court should have no discretion to make an equitable determination, while the IRS "seeks to preserve all of *its* discretion, including, curiously, whether to collect the tax from a taxpayer with the means to pay it."  Szwyd II, 394 B.R. at 245 n.3.  The government's refusal to submit the equity of its position to judicial review notwithstanding its waiver of sovereign immunity under Bankruptcy Code Section 106(a) – for the self-proclaimed purpose of preserving its own unfettered discretion – is quite troubling indeed.

For all the foregoing reasons, the Court finds that the IRS should be compelled to marshal its assets under the particular, undisputed facts presented in this case. Accordingly, the Court will GRANT the Trustee's request for summary judgment and the IRS's request for summary judgment will be DENIED.  An order in conformity with this memorandum shall issue forthwith.

DATED: February 15, 2011                         By the Court,

*[signature: Henry Jack Boroff]*

───────────────────────────
Henry J. Boroff
United States Bankruptcy Judge